HEIDEN REALTY CO. *v.* BROWN.

1. PRINCIPAL AND AGENT—DIRECTOR AND HEAD OF DEPARTMENT WAS CORPORATION'S AGENT.

    A director of a real estate corporation, who was the head of its acreage department, sustained the relation of agent to the company, and was bound under the law to the utmost good faith and loyalty while the relationship continued.

2. TRUSTS—CONSTRUCTIVE FRAUD.

    Where a director of a real estate company in charge of its acreage department secured a favorable option on farm lands and secretly took a preliminary contract in his own name in violation of his duty to the company, said contract was acquired through constructive fraud and therefore is impressed with a trust in favor of the company while in the hands of said director or his assigns with notice.

3. VENDOR AND PURCHASER—NOTICE—TRUSTS.

    An assignee of a land contract who had notice of his assignor's relations as director in a real estate company, and of a dispute between them over the property conveyed, had sufficient notice to put him on inquiry, and therefore took the land subject to the rights of the company.

4. PRINCIPAL AND AGENT—NOTICE TO AGENT NOTICE TO PRINCIPAL.
   Actual notice to a general agent and confidential adviser of third party's interest in land conveyed by contract to the agent and assigned to the principal was notice to the principal.

Appeal from Oakland; Lamb (Fred S.), J., presiding.     Submitted June 5, 1928.     (Docket No. 28, Calendar No. 33,562.)     Decided July 24, 1928.

Bill by the Heiden Realty Company against Charles F. Brown and others to impress a trust upon a land contract, and for an injunction.     From a decree for plaintiff, defendants appeal.     Affirmed.

*Earl D. Burke* (*John H. Patterson* and *Emmons, Klein, Ferris & Cook,* of counsel), for plaintiff.

*Andrew L. Moore, Pelton & McGee,* and *James G. McHenry,* for defendants.

POTTER, J.     Plaintiff, a Michigan corporation, filed its bill of complaint and later its amended bill of complaint against Charles F. Brown, John W. Thompson, Henry Thompson, J. R. McKinney, Nettie McKinney and Jeanette McKinney.     The amended bill of complaint alleges that plaintiff was organized for the purpose of owning, conducting, and operating a general real estate business and dealing in and owning subdivisions, buildings, and lands of all descriptions; that defendant Charles F. Brown was one of its directors and vice-president, and an agent and employee of plaintiff in its business, having full access to all its records and possessed of full knowledge of its equities, undertakings, and obligations; that defendant John W. Thompson was an employee and agent in and about the business of plaintiff, having access to the records and dealings of plaintiff, and an oppor-

tunity to become familiar with its transactions; that defendant Henry Thompson was a brother of John W. Thompson and a client of plaintiff, and through his dealings with plaintiff was possessed of full knowledge of the relationship and authority of defendants Brown and Thompson; that defendants McKinney were the owners of certain real estate; that plaintiff obtained, through its employees, an option on 92 acres of land belonging to the McKinneys for $700 an acre; that defendants Charles F. Brown and John W. Thompson, for the purpose of defrauding plaintiff after it obtained its option, procured a land contract from the defendants McKinney for the purchase of the land substantially in accordance with the terms of the option of plaintiff, and the taking of said contract by defendants Charles F. Brown and John W. Thompson was contrary to the rights and against the interests of plaintiff. The bill, by appropriate language, charges this was a breach of the trust arising out of the fiduciary relation which existed between the defendants Brown and Thompson, and plaintiff, and the bill of complaint asks that defendants be restrained from selling, assigning, incumbering, or disposing of the premises; the contract executed between Charles F. Brown and John W. Thompson and the McKinneys held and decreed to have been taken and received by them in trust for the benefit of plaintiff; and they required to assign, quitclaim, and transfer the interests acquired by them from the McKinneys to plaintiff; and that in case the defendants Brown and Thompson fail to do so the decree of the court may stand in lieu of such assignment. The case was tried in the circuit court for the county of Oakland, Honorable Fred S. Lamb presiding. A decree for plaintiffs was entered and defendants appeal.

The learned chancellor before whom the case was heard filed a written opinion stating and disposing of the issues herein as follows:

"Defendants J. R. McKinney and Jeanette McKinney are the owners of the record title to the lands in dispute in this suit; defendants Charles F. Brown and John W. Thompson were, during the period involved in the case, associated with the Heiden Realty Company, as agents or employees; Joseph P. Carolan is the assignee of the land contract, covering the lands here in controversy, and who now claims to be the owner of such contract interest; and Henry S. Thompson, a brother of John W. Thompson, is made a defendant, but disclaims any interest in the subject-matter of this litigation.

"In the spring of 1922, Charles F. Brown became associated with the Heiden Realty Company as a stockholder, was later elected as a director and continued to hold the position until his resignation, which terminated his relations with the company December 31, 1924.    He took a very active part in the conduct of the company's affairs, attended practically all of the meetings of the board of directors and at all times manifested a keen and growing interest in its business. During a large portion of the time that he was a director, he was also vice-president of the company, and was such during the year 1924.

"July 11, 1924, at a meeting of the board of directors of the company, the various activities of the organization were divided into departments, among which was one known as the acreage department.    By action of the board of directors, Charles F. Brown was chosen as head of this department.    He at once assumed the responsibility of the position and continued to act in that capacity, until his relations with the company ceased, December 31, 1924.    During this time he had in his employ and working under him George Zahn and John W. Thompson, one of the defendants hereto.

"On the 2d day of October, 1924, the aforesaid George Zahn, who had been assigned to list acreage for the department, received from J. R. McKinney and his wife an option in the name of the Heiden Realty Company, covering the 92 acres of land described in the bill of complaint.    This he turned into the acreage department by turning the same over to Charles F. Brown.    This option was good and in force until noon, on the 2d day of November, 1924.    The acreage as covered by this option was considered by Brown

and his associates in the acreage department as an unusually attractive buy and was the subject of considerable discussion in and around the office of the department.

"Later in the month of October, 1924, but prior to the 27th thereof, Brown, through an introduction by Zahn, got in touch with Mr. J. R. McKinney, and the result of this conference with Mr. McKinney was an arrangement of more satisfactory terms for the acreage in question than those contained in the option above referred to. While still acting as either officers, agents or employees of the Heiden Realty Company, without reporting it to the Heiden Realty Company, and without its knowledge or consent, Charles F. Brown, John W. Thompson, and George Zahn undertook to arrange among themselves the formation of a syndicate to handle these lands, and they or some of them were to become members of such syndicate.

"At a meeting of the directors of the company, held on the 24th day of October, 1924, Brown reported that he was trying to get control of these and other lands in the same locality. Considerable discussion followed and the result was that he was directed to use his best efforts to get these lands for the company.

"October 27, 1924, while the original option had yet several days to run, Brown went to the McKinney farm and obtained from McKinney and his wife a preliminary sales agreement, running to Charles F. Brown, on a deposit of $500, which Brown then paid out of his own or borrowed money as an evidence of good faith, and was to apply on the down payment of $5,000, in case the agreement ripened into a land contract, for which land contract the preliminary agreement provided.

"At the meeting of the directors of the company, on the 8th day of November, 1924, without reporting to the board the fact that he had secured a preliminary sales agreement, running to himself, from Mr. McKinney and his wife, and covering these same lands, Brown advised that the McKinney acreage be syndicated and the commission and the profit be prorated among the departments of the company. Discussion was had but no action was taken.

"The board of directors held a meeting nearly every week following the meeting of November 8th, at which

Brown was present.   At no time was there any action taken giving the company's consent to the activities of Brown and Thompson, looking to a syndicate to take these lands, neither was any action taken to indicate that the company had decided not to continue to get these lands for its own purposes.   At a meeting of December 20, 1924, at which Brown was present, he was given specific instructions to obtain these lands for the company, if possible.   Notwithstanding such instructions, the record discloses that Brown, John W. Thompson, and Henry S. Thompson, as sole stockholders, as of December 20, 1924, signed articles of association of the Thompson-Brown Corporation, to which the activities concerning these lands were turned over, through the activities of Brown while a director and an officer of the Heiden Realty Company.

"Some time in the month of December, 1924, the directors of the company had issued a call for the unpaid subscriptions of Joseph P. Carolan and Charles F. Brown.   Brown, on his own motion, had Joseph P. Carolan released from any further payment on his subscription.   While Carolan had been a member of the company, it had done considerable business for him along various lines.   For the most part this business had been attended to by Brown himself. Carolan had, therefore, every facility for knowing and did know Brown's position with the Heiden Realty Company and was apprised of the duty he then owed to the company and the obligation under which he was working.

"At a meeting of the board of directors, held on the 31st day of December, 1924, at which Brown was present, a discussion arose as to how Brown was progressing with the matter of getting the McKinney property lined up for the company.   Brown then reported that two of those interested in the so-called syndicate were out of the city and he had not seen them, and he would report later.   As his resignation took effect December 31, 1924, no further report was ever made by him to the company.

"So far as this record discloses, no syndicate to take over the McKinney lands was ever actually formed, except, possibly, in the fertile imagination of Charles F. Brown, no money was paid to anyone by any member of the proposed syndicate, nor was any interest in the

option or in the sales agreement transferred to anyone purporting to be a member of the syndicate, nor was any such transfer attempted. As a fact, there was no time from the 27th day of October, 1924, until the 6th day of January, 1925, that Charles F. Brown could not have turned these lands over to the Heiden Realty Company, had he been so disposed. If at any time either John W. Thompson or Miss Maurer had any interest in the preliminary sales agreement of October 27, 1924, held by Brown in his own name, as member or members of a proposed syndicate, the record is absolutely silent and barren of any evidence of a release thereof, making it possible for Charles F. Brown to take the land contract in his own name and right, on the 5th day of January, 1925; and if the syndicate was to consist of Carolan and Miss Maurer, why was the land contract assigned absolutely to John P. Carolan, on January 6, 1925? The syndicate was a myth, except as a subject of talk and as a cover to what was actually taking place.

"During the year 1924, while a stockholder in, a director and vice-president of, and for several months thereof the head of the acreage department of the Heiden Realty Company, Charles F. Brown was the agent, confidential adviser and economic manager of Joseph P. Carolan, with general power to act and to use his own judgment as to what to do and how to do it. During the fall of 1924 he had several thousands of dollars of Carolan's money to invest, which he had used and invested as occasion required. He had also borrowed some money from Miss Maurer, for which he gave his note. It was a part of the money of both of these parties that was used in making the payment of $4,500 to Mr. McKinney, January 5, 1925, although the actual check, as certified by the bank, was the check of Henry S. Thompson.

"Before, and at the time of the assignment of the land contract to him, on January 6, 1925, Joseph P. Carolan knew that Brown was a director and the vice-president of the Heiden Realty Company, or had been up to five days before, and that Brown and the Heiden Realty Company were having trouble over the McKinney lands. He admits that he knew it and the correspondence shows it.

"It is admitted and the record shows that· neither

Charles F. Brown, John W. Thompson, nor Henry S. Thompson has or claims any interest in these lands at this time.    Joseph P. Carolan claims the entire interest therein under and by virtue of his land contract. It is admitted by Carolan that $2,000 of Miss Maurer's money is a part of what has been credited to Carolan on this contract, although she has nothing to show to that effect and is not made a party to this suit.

"The interest of J. R. McKinney and Jeanette McKinney herein extends no farther than to have it decided to whom they are to look, in the future, for the payments on the contract and the fulfilment of the conditions therein contained, and with whom to deal, when all the conditions of the land contract have been carried out in accordance with its terms.    In this connection it may not be out of place to add that no possible culpability can attach to these defendants under the facts in this case.    They had a right to assume, and undoubtedly did assume, when approached by Brown as coming from the Heiden Realty Company, that all he was attempting to do was in furtherance of the deal already pending for and with the company.    Their good faith is not in the least in question in this case.

"It must be conceded, I think, that the relationship of principal and agent existed between the Heiden Realty Company and Charles F. Brown for and during the year 1924.    That, while sustaining that confidential relation with his principal, Charles F. Brown was bound under the law to the utmost good faith and loyalty there can be no ground for serious dispute. His actions as disclosed by the record manifest a most flagrant violation of the essential elements of that relationship, amounting to, if not actual fraud in fact, to constructive fraud to the loss and injury of his principal, making the application of the doctrine of constructive trusts imperative.

"Under this record, the preliminary sales agreement, taken by Charles F. Brown, in his own name, on October 27, 1924, and the land contract, covering these same lands, issued to him in pursuance of the terms of that instrument, under date of January 5, 1925, must be held, under the law, to belong to the Heiden Realty Company and impressed with a trust

in its behalf while in the hands of Charles F. Brown, or his assigns with notice.

"To the contention of the defendants that Joseph P. Carolan stands in the position of a purchaser for value without notice I cannot subscribe. He knew of the relation which Brown occupied as to the Heiden Realty Company and was actually aware, before and at the time he received the assignment of the land contract, that the Heiden Realty Company were in dispute over this property. He had ample notice to put him on inquiry, and in accepting the assignment of the contract and making payments thereon, he must be held to have assumed all the risk. But, assuming that Carolan had received no actual notice, Brown, who was then and had been for some time the general agent, confidential adviser and investor of Carolan's money, with or without consultation and in the exercise of his own judgment, had notice of what Brown himself was doing, and notice to Brown, under such circumstances, must be held to be notice to Carolan. It follows that the trust impressed upon the preliminary sales agreement and the land contract in the hands of Charles F. Brown will follow assignment thereof into the hands of Joseph P. Carolan."

We concur in the opinion of the trial court and the decree herein is affirmed, with costs.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred.